FiLED

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

2005 APR 25 P 3: 16

MITCHELL LEE,

       Plaintiff,

                                     CASE NO.

v.
                                        3:05-cv-359-J-25TEM

LIBERTY LIFE ASSURANCE COMPANY
OF BOSTON, a foreign corporation,

       Defendant.

_____/

## COMPLAINT

Plaintiff, MITCHELL LEE, by and through his undersigned attorney, sues Defendant,

LIBERTY LIFE ASSURANCE COMPANY OF BOSTON, a foreign corporation, and says:

    1.      Plaintiff, MITCHELL LEE, resides in Columbia County, Florida.

    2.      Defendant is a foreign corporation authorized to and transacting insurance

business in the state of Florida.  Defendant issued a policy of Long Term Disability Insurance

which funded an ERISA Plan which provided benefits to Plaintiff.  Attached hereto as Exhibit

"A" is a copy of what Defendant has identified as the complete Plan.

    3.      Defendant, LIBERTY LIFE ASSURANCE COMPANY ("Liberty") is the plan

administrator, *de facto* plan administrator, and/or agent for the plan administrator identified in

COMPLAINT - 1

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

MITCHELL LEE,

       Plaintiff,

                                       CASE NO.

v.

LIBERTY LIFE ASSURANCE COMPANY
OF BOSTON, a foreign corporation,

       Defendant.

_____/

## COMPLAINT

Plaintiff, MITCHELL LEE, by and through his undersigned attorney, sues Defendant,

LIBERTY LIFE ASSURANCE COMPANY OF BOSTON, a foreign corporation, and says:

    1.     Plaintiff, MITCHELL LEE. resides in Columbia County, Florida.

    2.     Defendant is a foreign corporation authorized to and transacting insurance

business in the state of Florida.  Defendant issued a policy of Long Term Disability Insurance

which funded an ERISA Plan which provided benefits to Plaintiff.  Attached hereto as Exhibit

"A" is a copy of what Defendant has identified as the complete Plan.

    3.     Defendant. LIBERTY LIFE ASSURANCE COMPANY ("Liberty") is the plan

administrator, *de facto* plan administrator, and/or agent for the plan administrator identified in

COMPLAINT - 1

the summary plan description to which all duties and responsibilities of the plan administrator have been delegated. Defendant, in fact, controlled administration of the Plan including the information function and made all decisions regarding Plaintiff's benefits.

4.      Plaintiff became permanently disabled from his stressful occupation as a financial consultant on or before 12/20/97.

5.      As of 4/27/04, Defendant terminated Plaintiff's long term disability benefits (for the third time) in a manner inconsistent with ERISA law and the ERISA Plan. Defendant originally terminated Plaintiff's long term disability ("LTD") benefits on 4/18/00; Defendant reversed this decision, but again terminated benefits on 6/18/00; this decision was overturned by Order entered 1/7/03, by the Honorable Timothy J. Corrigan, Case No. 3:01-cv-461-J-32TEM, where the Court held that Defendant's decision to deny benefits was both wrong and unreasonable.

6.      Plaintiff has filed all necessary forms of proof and completely complied with all conditions and requirements of the policy/plan and has provided to the Defendant medical evidence establishing that he is totally disabled from his former occupation. Plaintiff has exhausted all administrative remedies, and/or, Plaintiff is excused from exhausting administrative remedies due to Defendant's violation of ERISA law.

7.      Defendant's investigation of Plaintiff's disability claim was not undertaken in good faith and was not genuine.

8.      Defendant imposed requirements on Plaintiff not imposed by the Plan.

COMPLAINT - 2

9.     Defendant failed to apply the Plan as written, and failed to follow its own guidelines or criteria.

10.    Defendant's denial letters failed to comply with applicable ERISA law as Defendant failed to provide the specific reason for denial with reference to the policy provisions on which it was based, and failed to describe the additional material necessary to complete the claim and explain why it was necessary.

11.    Defendant selectively considered the evidence submitted by Plaintiff and generated by Defendant, and ignored evidence which did not support and/or conflicted with its decision to deny Plaintiff's disability benefits; Defendant's denial is not supported by substantial evidence.

12.    As a result of Defendant's actions in terminating benefits and declaring Plaintiff to not be disabled, Plaintiff has lost his employer provided health insurance coverage and has incurred significant additional costs in obtaining replacement COBRA coverage.

13.    Defendant refused to accept, review and consider medical records and documents properly submitted in support of Plaintiff's claim, asserting that said information was not submitted timely.

**COUNT I**
**CLAIM FOR BENEFITS**

14.    Plaintiff re-alleges and re-avers Paragraphs 1-13 above inclusive.

15.    Under the facts and circumstances, particularly as set forth in paragraphs 6-13 above, present in the instant case Plaintiff is entitled to a *de novo* review; alternatively, Plaintiff is entitled to a heightened arbitrary and capricious standard due to the fact that Defendant Liberty

COMPLAINT - 3

(a for profit corporation paying benefits out of its own assets) is a conflicted Plan/Claim's administrator.

16.     Defendant's decision to deny benefits should be overturned because: it is wrong; it is not supported by substantial medical evidence; it is erroneous on a question of law; it is arbitrary and capricious; it is based upon requirements not set forth in the Plan and ignores pertinent language in the Plan; it violates of the heightened arbitrary and capricious standard. In particular, Defendant's letters of denial failed to comply with ERISA law; misinterpreted the Plan and particularly the disability requirements and imposed requirements not included in the Plan; Defendant reached a decision to deny the claim which was not supported by substantial evidence.

17.     Plaintiff has retained the undersigned attorney and is obligated to him for reasonable attorney fees for his services.  Plaintiff seeks reasonable attorney's fees pursuant to § 29 USC 1132 (g).

**WHEREFORE**, Plaintiff demands judgment for damages against Defendant Liberty for disability benefits together with interest, attorney fees, and costs, and further requests equitable relief requesting that Defendant be compelled to take whatever steps are necessary to retroactively reinstate Plaintiff's health coverage and/or to hold Plaintiff harmful from the consequences of Defendant's action which resulted in termination of Plaintiff's health coverage.

## COUNT III
## EQUITABLE RELIEF-REMAND

18.     Plaintiff re-alleges and re-avers Paragraphs 1-13 inclusive above and says:

COMPLAINT - 4

19.    Due to Defendant's failure to conduct a good faith review. review records submitted by Plaintiff. issue a denial letter in compliance with ERISA law. fully evaluate the claim until after Plaintiff's appeal of Defendant's original denial. Plaintiff was denied a meaningful decision and/or appeal.

20.    Plaintiff has retained the undersigned attorney and is obligated to him for reasonable attorney fees for his services and costs.  Plaintiff seeks reasonable attorney's fees and costs pursuant to § 29 USC 1132 (g).

**WHEREFORE** Plaintiff respectfully requests. only in the event this Court determines it is unable to grant full relief for Plaintiff. that this Court remand this case and require Defendant to re-evaluate the case in light of all the evidence submitted and with proper application of the Plan as written.  Plaintiff also requests that this Court award him reasonable attorney fees and costs incurred.

**TERENCE J. KANN, P.A.**

Terence J. Kann
Florida Bar #286664
2790 NW 43rd Street, Ste. 100
Gainesville, FL 32606
Telephone: (352) 375-3203
Facsimile (352) 380-0378
Attorney for Plaintiff

**COMPLAINT - 5**



### LIBERTY MUTUAL.

Liberty Life Assurance Company
of Boston

## GROUP DISABILITY INCOME POLICY

Sponsor:         American Business Products, Inc.

Policy Number:   50-274598

Effective Date:  August 1, 1995

Governing Jurisdiction is Georgia and subject to the laws of that State.

Premiums are due and payable monthly on the first day of each month.

Policy Anniversaries shall occur each August 1st beginning in 1996.

Liberty Life Assurance Company of Boston (hereinafter referred to as Liberty) agrees to pay the benefits provided by this policy in accordance with its provisions. This policy provides group Long Term Disability coverage.

PLEASE READ THIS POLICY CAREFULLY FOR FULL DETAILS.

This policy is a legal contract and is issued in consideration of the Application of the Sponsor, a copy of which is attached, and of the payment of premiums by the Sponsor.

The following pages including any amendments, riders or endorsements are a part of this policy.

Signed at Liberty's Home Office, 175 Berkeley Street, Boston, Massachusetts, 02117.

SECRETARY                                    PRESIDENT

NON-PARTICIPATING

Form DOP3
GLU-891

# TABLE OF CONTENTS

SECTION 1................................  SCHEDULE OF BENEFITS

SECTION 2................................  DEFINITIONS

SECTION 3................................  ELIGIBILITY AND EFFECTIVE DATES

SECTION 4................................  DISABILITY INCOME BENEFITS

SECTION 5................................  EXCLUSIONS

SECTION 6................................  TERMINATION PROVISIONS

SECTION 7................................  GENERAL PROVISIONS

SECTION 8................................  PREMIUMS

SECTION 9................................  APPLICATION

Form DOP3-TOC-0001

Table of Contents

## SECTION 1 - SCHEDULE OF BENEFITS

ELIGIBLE CLASSES FOR INSURANCE BENEFITS:

(Employees working a minimum of 30 regularly scheduled hours per week)

Long Term Disability Benefits:

Class 1:  All Sales and Exempt Employees who are in Active Employment are eligible for a 24 Month Own Occupation Benefit.

Class 2:  All Hourly Employees of the International Envelope Company except those located in California, who are in Active Employment are eligible for a 24 month Own Occupation Benefit.

ELIGIBILITY WAITING PERIOD:

1.   Present Employees:      One month of continuous, Active Employment.

2.   New Employees:          One month of continuous, Active Employment.

EMPLOYEE CONTRIBUTIONS REQUIRED:      Yes

NAME OF ASSOCIATED COMPANY(S):

Curtis 1000 Inc.                          International Envelope Company
2100 RiverEdge Parkway                    2 Tabes Lane
Suite #1100                               Exton, PA  19341
Atlanta, GA  30328

LONG TERM DISABILITY COVERAGE

Elimination Period:    180 days.

Amount of Insurance Benefits:

Class 1: 60% (Benefit Percentage) of Basic Monthly Earnings not to exceed a Maximum Monthly Benefit of $12,000.
Less Benefits from Other Income Stated In This Coverage Including:
     Primary and family benefits with 70% all sources.

Class 2: 60% (Benefit Percentage) of Basic Monthly Earnings not to exceed a Maximum Monthly Benefit of $5,000.

Less Benefits from Other Income Stated In This Coverage Including:
     Primary and family benefits.

Form DOP3-SCH-0001

General Information/
Long Term Disability

## SECTION 1 - SCHEDULE OF BENEFITS

ELIGIBLE CLASSES FOR INSURANCE BENEFITS: (Employees working a minimum of 30 regularly scheduled hours per week)

Long Term Disability Benefits:

All Sales and Exempt Employees who are in Active Employment are eligible for a 24 Month Own Occupation Benefit.

ELIGIBILITY WAITING PERIOD:

1.   Present Employees:      One month of continuous, Active Employment.

2.   New Employees:        One month of continuous, Active Employment.

EMPLOYEE CONTRIBUTIONS REQUIRED:      Yes

NAME OF ASSOCIATED COMPANY(S):

Curtis 1000 Inc.                            International Envelope Company
2100 RiverEdge Parkway                      2 Tabes Lane
Suite #1100                                 Exton, PA 19341
Atlanta, GA 30328

LONG TERM DISABILITY COVERAGE

Elimination Period:   180 days.

Amount of Insurance Benefits:   60% (Benefit Percentage) of Basic Monthly Earnings not to exceed a Maximum Monthly Benefit of $12,000.

Less Benefits from Other Income Stated In This Coverage Including:

Primary and family benefits with 70% all sources.

Maximum Benefit Period:

| Age at Disability | Maximum Benefit Period |
|---|---|
| Less than age 60 | To age 65 |
| 60 | 60 Months |
| 61 | 48 Months |
| 62 | 42 Months |
| 63 | 36 Months |
| 64 | 30 Months |
| 65 | 24 Months |
| 66 | 21 Months |
| 67 | 18 Months |
| 68 | 15 Months |
| 69 and over | 12 Months |

The Minimum Monthly Benefit is $100 or 10% of the Covered Person's gross Monthly Benefit, whichever is greater.

General Information/
Long Term Disability

Form DOP3-SCH-0001

## SECTION 2 - DEFINITIONS

In this section Liberty defines some basic terms needed to understand this policy. The male pronoun whenever used in this policy includes the female.

"Active Employment" means the Employee must be actively at work for the Sponsor:

1. on a full-time basis and paid regular earnings;

2. for at least the minimum number of hours shown in the Schedule of Benefits; and either perform such work:
   a. at the Sponsor's usual place of business; or
   b. at a location to which the Sponsor's business requires the Employee to travel.

An Employee will be considered actively at work if he was actually at work on the day immediately preceding:
1. a weekend (except where one or both of these days are scheduled days of work);
2. holidays (except when such holiday is a scheduled work day);
3. paid vacations;
4. any non-scheduled work day;
5. an excused leave of absence (except medical leave and lay-off); and
6. an emergency leave of absence (except emergency medical leave).

"Administrative Office" means Liberty Life Assurance Company of Boston, 100 Main Street, Dover, New Hampshire 03820.

"Application" is the document designated Section 9, it is attached to and is made a part of this policy.

"Basic Monthly Earnings" or "Pre-Disability Earnings" means the Covered Person's monthly rate of earnings from the Sponsor as of the March 1st preceeding the date Disability or Partial Disability begins. However, such earnings will not include overtime pay and extra compensation other than bonuses and commissions. Commissions will be averaged over the 12 month period prior to the date Disability begins.

"Consumer Price Index" means a government publication for wage earners and clerical workers provided monthly by the U.S. Department of Labor, or its successor or in the event of no successor a similar Index of comparable purpose chosen by Liberty.

"Covered Person" means an Employee insured under this policy.

"Disability" or "Disabled" means:

1. For persons other than pilots, co-pilots, and crew of an aircraft:

   i. If the Covered Person is eligible for the 24 Month Own Occupation Benefit, "Disability" or "Disabled" means during the Elimination Period and the next 24 months of Disability the Covered Person is unable to perform all of the material and substantial duties of his occupation on an Active Employment basis because of an Injury or Sickness; and

   ii. After 24 months of benefits have been paid, the Covered Person is unable to perform, with reasonable continuity, all of the material and substantial duties of his own or any other occupation for which he is or becomes reasonably fitted by training, education, experience, age and physical and mental capacity.

## SECTION 2 - DEFINITIONS
### (Continued)

"Disability" or "Disabled" (Continued)

2.  With respect to Covered Persons employed as pilots, co-pilots and crew of an aircraft:

    "Disability" or "Disabled" means because of Injury or Sickness the Covered Person cannot perform the material and substantial duties of any gainful occupation for which he is or becomes reasonably fitted by training, education, experience, age and physical and mental capacity.

"Disability Benefits", when used with the term Retirement Plan, means money which:

1.  is payable under a Retirement Plan due to Disability as defined in that plan; and

2.  does not reduce the amount of money which would have been paid as Retirement Benefits at the normal retirement age under the plan if the Disability had not occurred. (If the payment does cause such a reduction, it will be deemed a Retirement Benefit as defined in this policy.)

"Eligibility Date" means the date an Employee becomes eligible for insurance under this policy. Eligible Classes are shown in the Schedule of Benefits.

"Eligibility Waiting Period" as shown in the Schedule of Benefits means the continuous length of time an Employee must serve in an eligible class to reach his Eligibility Date.

"Elimination Period" means a period of consecutive days of Disability for which no benefit is payable. The Elimination Period is shown in the Schedule of Benefits and begins on the first day of Disability.

If the Covered Person returns to work for any 14 or less days during the Elimination Period and cannot continue, Liberty will count only those days the Covered Person is Disabled to satisfy the Elimination Period.

"Employee" means a person in Active Employment with the Sponsor.

"Evidence of Insurability" means a statement or proof of an Employee's medical history upon which acceptance for insurance will be determined by Liberty.

"Gross Monthly Benefit" means the Covered Person's Monthly Benefit before any reduction for Benefits from Other Income and earnings.

"Indexed Pre-Disability Earnings" means the Covered Person's Basic Monthly Earnings in effect just prior to the date Disability or Partial Disability began adjusted on the first anniversary of benefit payments and each anniversary thereafter.

"Injury" means bodily impairment resulting directly from an accident and independently of all other causes.

Any Disability which begins more than 60 days after an Injury will be considered a Sickness for the purpose of determining benefits under this policy.

"Physician" means a person who:

1.  is licensed to practice medicine and prescribe and administer drugs or to perform surgery; and

## SECTION 2 - DEFINITIONS
### (Continued)

"Physician" (Continued)

    2.  is not a Covered Person or his spouse, daughter, son, father, mother, sister or brother; and

    3.  is a licensed practitioner of the healing arts in a category specifically favored under the health insurance laws of the State where the policy is delivered, and practicing within the terms of his license.

"Pre-Disability Earnings" - See definition of Basic Monthly Earnings.

"Retirement Benefit", when used with the term Retirement Plan, means money which:

    1.  is payable under a Retirement Plan either in a lump sum or in the form of periodic payments;

    2.  does not represent contributions made by an Employee (payments which represent Employee contributions are deemed to be received over the Employee's expected remaining life regardless of when such payments are actually received); and

    3.  is payable upon:

        a.  early or normal retirement; or

        b.  Disability, if the payment does reduce the amount of money which would have been paid under the plan at the normal retirement age.

"Retirement Plan" means a plan which provides Retirement Benefits to Employees and which is not funded wholly by Employee contributions. The term shall not include: a profit-sharing plan, informal salary continuation plan, registered retirement savings plan, stock ownership plan, or a non-qualified plan of deferred compensation.

"Schedule of Benefits" means the section of this policy which shows, among other things, the Eligible Classes, Eligibility Waiting Period, Elimination Period, Amount of Insurance, Minimum Benefit, and Maximum Benefit Period.

"Sickness" means illness, disease, pregnancy or complications of pregnancy.

"Sponsor" means the entity to whom the policy is issued.

"Sponsor's Retirement Plan" is deemed to include any Retirement Plan:

    1.  which is part of any Federal, State, Municipal or Association retirement system; or

    2.  for which the Employee is eligible as a result of employment with the Sponsor.

"Monthly Benefit" means the amount payable by Liberty to the Disabled or Partially Disabled Covered Person. Benefits for Long Term Disability coverage are determined on a monthly basis.

## SECTION 4 - DISABILITY INCOME BENEFITS

LONG TERM DISABILITY COVERAGE

**Disability Benefit**

When Liberty receives proof that a Covered Person is Disabled due to Injury or Sickness and requires the regular attendance of a Physician, Liberty will pay the Covered Person a Monthly Benefit after the end of the Elimination Period. The benefit will be paid for the period of Disability if the Covered Person gives to Liberty proof of continued:

1. Disability; and

2. regular attendance of a Physician.

The proof must be given upon Liberty's request and at the Covered Person's expense.

For the purpose of determining Disability, the Injury must occur and Disability must begin while the Employee is insured for this coverage. In addition, a loss of a license for any reason does not, in itself, constitute Disability.

The Monthly Benefit will not:

1. exceed the Covered Person's Amount of Insurance; nor

2. be paid for longer than the Maximum Benefit Period.

The Amount of Insurance and the Maximum Benefit Period are shown in the Schedule of Benefits.

**Amount of Disability Monthly Benefit**

To figure the amount of Monthly Benefit:

1. Multiply the Covered Person's Basic Monthly Earnings by the Benefit Percentage shown in the Schedule of Benefits.

2. Take the lesser of:

    a. the amount figured in step (1) above; or

    b. 70% of the Covered Person's Basic Monthly Earnings less the Benefits from Other Income, (shown in the Benefits from Other Income provision of this coverage); or

    c. the Maximum Monthly Benefit shown in the Schedule of Benefits.

The Disability Benefit payable will never be less than the Minimum Monthly Benefit shown in the Schedule of Benefits.

## SECTION 4 - DISABILITY INCOME BENEFITS
### (Continued)

LONG TERM DISABILITY COVERAGE (Continued)

Benefits from Other Income

Benefits from Other Income means those benefits shown below:

1.  The amount for which the Covered Person is eligible under:

    a.  Workers' or Workmen's Compensation Law;

    b.  occupational disease law;

    c.  any compulsory benefit act or law; or

    d.  any other act or law of like intent.

2.  The amount of any disability benefits which the Covered Person is eligible to receive under:

    a.  any other group insurance plan of the Sponsor;

    b.  any governmental retirement system as a result of his job with the Sponsor.

3.  The amount of benefits the Covered Person receives under the Sponsor's Retirement Plan as follows: (a) The amount of any Disability Benefits, or Retirement Benefits the Covered Person voluntarily elects to receive as retirement payment under the Sponsor's Retirement Plan; and (b) the amount the Covered Person is eligible to receive as retirement payments when he reaches the later of age 62, or normal retirement age as defined in the Sponsor's plan.

4.  The amount of Disability and/or Retirement Benefits under the United States Social Security Act, the Canada Pension Plan, the Quebec Pension Plan, or any similar plan or act, for which:

    a.  the Covered Person receives or is eligible for; and

    b.  his spouse, child or children receives or are eligible for because of his Disability; or

    c.  his spouse, child or children receives or are eligible for because of his eligibility for Retirement Benefits.

These Benefits from Other Income, except Retirement Benefits, must be payable as a result of the same Disability for which Liberty pays a benefit.

## SECTION 4 - DISABILITY INCOME BENEFITS
### (Continued)

LONG TERM DISABILITY COVERAGE (Continued)

**Cost of Living Freeze**

After the first deduction for each of the Benefits from Other Income, the Monthly Benefit will not be further reduced due to any cost of living increases payable under the Benefits from Other Income provision of this coverage. This provision does not apply to increases received from any form of employment.

**Lump Sum Payments**

Benefits from Other Income which are paid in a lump sum will be prorated on a monthly basis over the time period for which the sum is given or the Maximum Benefit Period, whichever is less.

**Prorated Benefits**

For any period which a Long Term Disability Benefit is payable that does not extend through a full month, the benefit will be paid on a prorated basis. The rate will be 1/30th per day for such period of Disability.

**Benefit Period Extension**

The Maximum Benefit Period is shown in the Schedule of Benefits. However, the benefit will be extended beyond the end of the Maximum Benefit Period if a Covered Person who is Disabled attains the age specified in the benefit duration and has not received 12 Monthly Benefit payments. In this event, the benefit period will be extended during the continuance of Disability until 12 monthly payments have been paid.

**Discontinuation of Long Term Disability Benefits**

The Monthly Benefit will cease on the earliest of:

1.   the date the Covered Person is no longer Disabled; or

2.   the date the Covered Person dies; or

3.   the end of the Maximum Benefit Period; or

4.   the date the Covered Person's current earnings exceed 85% of his Indexed Pre-Disability Earnings.

Because the Covered Person's current earnings may fluctuate, Liberty may average earnings over three (3) consecutive months rather than immediately terminating his benefit once 85% of Indexed Pre-Disability Earnings has been reached.

## SECTION 4 - DISABILITY INCOME BENEFITS
### (Continued)

LONG TERM DISABILITY COVERAGE (Continued)

Successive Periods of Disability

With respect to this coverage, "Successive Periods of Disability" means a Disability which is related or due to the same cause(s) as a prior Disability for which a Monthly Benefit was payable.

A Successive Period of Disability will be treated as part of the prior Disability if, after receiving Disability Benefits under this coverage, a Covered Person:

1.  returns to his own occupation on an Active Employment basis for less than six continuous months; and

2.  performs all the material and substantial duties of his own occupation.

To qualify for a Successive Periods of Disability Benefit, the Covered Person must experience more than a 20% loss of Pre-Disability Earnings.

Benefit payments will be subject to the terms of this coverage for the prior Disability.

If a Covered Person returns to his own occupation on an Active Employment basis for six continuous months or more, the Successive Period of Disability will be treated as a new period of Disability. The Covered Person must complete another Elimination Period.

If a Covered Person becomes eligible for coverage under any other group Long Term Disability coverage, this Successive Period of Disability provision will cease to apply to that Covered Person.

## SECTION 4 - DISABILITY INCOME BENEFITS
### (Continued)

LONG TERM DISABILITY COVERAGE (Continued)

Three Month Survivor Benefit

Liberty will pay a lump sum benefit to the Eligible Survivor when proof is received that a Covered Person died:

    1.  after Disability had continued for 180 or more consecutive days; and

    2.  while receiving a Monthly Benefit.

The lump sum benefit will be an amount equal to three times the Covered Person's Last Monthly Benefit.

"Eligible Survivor" means the Covered Person's spouse, if living, otherwise the Covered Person's children under age 25.

If payment becomes due to the Covered Person's children, payment will be made in equal shares to:

    1.  the children; or

    2.  a person named by Liberty to receive payment on the children's behalf. This payment will be valid and effective against all claims by others representing or claiming to represent the children.

"Last Monthly Benefit" means the Monthly Benefit paid to the Covered Person immediately prior to his death without any reduction for earnings received from employment.

## SECTION 5 - EXCLUSIONS

GENERAL EXCLUSIONS

This policy will not cover any Disability due to:

1. war, declared or undeclared or any act of war;

2. intentionally self-inflicted injuries, while sane or insane;

3. active Participation in a Riot;

4. the Covered Person's committing of or the attempting to commit an indictable offense.

With respect to this provision, Participation shall include promoting, inciting, conspiring to promote or incite, aiding, abetting, and all forms of taking part in, but shall not include actions taken in defense of public or private property, or actions taken in defense of the person of the insured, if such actions of defense are not taken against persons seeking to maintain or restore law and order including, but not limited to police officers and firemen.

With respect to this provision, Riot shall include all forms of public violence, disorder or disturbance of the public peace, by three or more persons assembled together, whether or not acting with a common intent and whether or not damage to persons or property or unlawful act or acts is the intent or the consequence of such disorder.

## SECTION 5 - EXCLUSIONS
### (Continued)

LONG TERM DISABILITY COVERAGE

Pre-Existing Condition Exclusion

This policy will not cover any Disability or Partial Disability:

1. which is caused or contributed to by, or results from a Pre-Existing Condition; and

2. which begins in the first 12 months after the Covered Person's Effective Date, unless he received no Treatment of the condition for six consecutive months after his Effective Date.

"Pre-Existing Condition" means a condition resulting from an Injury or Sickness for which the Covered Person is diagnosed or received Treatment within three months prior to the Covered Person's Effective Date.

"Treatment" means consultation, care or services provided by a Physician including diagnostic measures and taking prescribed drugs and medicines.

# SECTION 6 - TERMINATION PROVISIONS

**Termination of Covered Person's Insurance**

A Covered Person will cease to be insured on the earliest of the following dates:

1. the date this policy terminates, but without prejudice to any claim originating prior to the time of termination;

2. the date the Covered Person is no longer in an eligible class;

3. the date the Covered Person's class is no longer included for insurance;

4. the last day for which any required Employee contribution has been made;

5. the date employment terminates. Cessation of Active Employment will be deemed termination of employment, except the insurance will be continued for an Employee absent due to Disability during:

   a. the Elimination Period; and

   b. the period during which premium is being waived.

6. the date the Covered Person ceases active work due to a labor dispute, including any strike, work slowdown, or lockout.

Liberty reserves the right to review and terminate all classes insured under this policy if any class(es) cease(s) to be covered.

**Lay-off or Leave of Absence**

The Sponsor may continue the Covered Person's coverage(s) by paying the required premiums, if the Covered Person is:

1. temporarily laid off; or

2. given leave of absence.

The Covered Person's coverage will not continue beyond the end of the policy month in which the lay-off or leave of absence begins. In continuing such coverage under this provision, the Sponsor agrees to treat all Covered Persons equally.

## SECTION 6 - TERMINATION PROVISIONS
### (Continued)

Policy Termination

1.  Termination of this policy under any conditions will not prejudice any claim which occurs while this policy is in force.

2.  If the Sponsor fails to pay any premium within the grace period, this policy will terminate at 12:00 midnight Standard Time on the last day of the grace period. The Sponsor may terminate this policy by advance written notice delivered to Liberty at least 31 days prior to the termination date. This policy will not terminate during any period for which premium has been paid. The Sponsor will be liable to Liberty for all premiums due and unpaid for the full period for which this policy is in force.

3.  Liberty may terminate this policy on any premium due date by giving written notice to the Sponsor at least 60 days in advance if:

    a.  the number of Employees insured is less than 10; or

    b.  less than 100% of the Employees eligible for any non-contributory insurance are insured for it; or

    c.  less than 75% of the Employees eligible for any contributory insurance are insured for it; or

    d.  the Sponsor fails:

        i.  to furnish promptly any information which Liberty may reasonably require; or

        ii.  to perform any other obligations pertaining to this policy.

4.  Liberty may terminate this policy or any coverage(s) afforded hereunder and for any class of covered Employees on any premium due date after it has been in force for 12 months. Liberty will provide written notice of such termination to the Sponsor at least 60 days before it is effective.

5.  Termination may take effect on an earlier date if agreed to by the Sponsor and Liberty.

# SECTION 7 - GENERAL PROVISIONS

## Statements

In the absence of fraud, all statements made in any signed Application are considered representations and not warranties (absolute guarantees). No representation by:

1.  the Sponsor in applying for this policy will make it void unless the representation is contained in the signed Application; or

2.  any Employee in applying for insurance under this policy will be used to reduce or deny a claim unless a copy of the application for insurance, signed by the Employee, is or has been given to the Employee.

## Complete Contract - Policy Changes

1.  This policy is the complete contract. It consists of:

    a.  all of the pages;
    b.  the attached signed Application of the Sponsor;
    c.  if contributory each Employee's signed application for insurance.

2.  This policy may be changed in whole or in part. Only an officer of Liberty can approve a change. The approval must be in writing and endorsed on or attached to this policy.

3.  No other person, including an agent, may change this policy or waive any part of it.

## Employee's Certificate

Liberty will provide a Certificate to the Sponsor for delivery to each Covered Person. It will state:

1.  the name of the insurance company and the policy number;
2.  a description of the insurance provided;
3.  the method used to determine the amount of benefits;
4.  to whom benefits are payable;
5.  limitations or reductions that may apply;
6.  the circumstances under which insurance terminates; and
7.  the rights of the Covered Person upon termination of this policy.

If the terms of a Certificate and this policy differ, this policy will govern.

## Interpretation of the Policy

Liberty shall possess the authority, in its sole discretion, to construe the terms of this policy and to determine benefit eligibility hereunder. Liberty's decisions regarding construction of the terms of this policy and benefit eligibility shall be conclusive and binding.

## SECTION 7 - GENERAL PROVISIONS
### (Continued)

Furnishing of Information - Access to Records

1.  The Sponsor will furnish at regular intervals to Liberty:

    a.  information relative to Employees:

        i.   who qualify to become insured;
        ii.  whose amounts of insurance change; and/or
        iii. whose insurance terminates.

    b.  any other information about this policy that may be reasonably required.

    The Sponsor's records which, in the opinion of Liberty, have a bearing on the insurance will be opened for inspection at any reasonable time.

2.  Clerical error or omission will not:

    a.  deprive an Employee of insurance;
    b.  affect an Employee's Amount of Insurance; or
    c.  effect or continue an Employee's insurance which otherwise would not be in force.


Misstatement of Age

If a Covered Person's age has been misstated, an equitable adjustment will be made in the premium.  If the amount of the benefit is dependent upon an Employee's age, the amount of the benefit will be the amount an Employee would have been entitled to if his correct age were known.

A refund of premium will not be made for a period more than 12 months before the date Liberty is advised of the error.


Notice and Proof of Claim

1.  Notice

    a.  Written notice of claim must be given to Liberty within 30 days of the date of the loss on which the claim is based, if that is possible.  If that is not possible, Liberty must be notified as soon as it is reasonably possible to do so.

    b.  When Liberty has the written notice of claim, Liberty will send the Covered Person its claim forms.  If the forms are not received within 10 days after written notice of claim is sent, the Covered Person can send Liberty written proof of claim without waiting for the form.

## SECTION 7 - GENERAL PROVISIONS
### (Continued)

Notice and Proof of Claim (Continued)

2.  Proof

   a.  Proof of claim must be given to Liberty.  This must be done no later than 30 days after the end of the Elimination Period.

   b.  Failure to furnish such proof within such time shall not invalidate nor reduce any claim if it was not reasonably possible to furnish such proof within such time.  Such proof must be furnished as soon as reasonably possible, and in no event, except in the absence of legal capacity of the claimant, later than one year from the time proof is otherwise required.

   c.  Proof of continued Disability or Partial Disability, when applicable, and regular attendance of a Physician must be given to Liberty within 30 days of the request for the proof.

   d.  The proof must cover, when applicable:

      i.    the date Disability or Partial Disability started;
      ii.   the cause of Disability or Partial Disability; and
      iii.  the degree of Disability or Partial Disability.

Time of Payment of Claims

When Liberty receives satisfactory proof of claim, the benefit payable under this policy may be paid at least monthly, depending on the coverage for which claim is made, during any period for which Liberty is liable.  Any balance remaining unpaid upon the termination of the period of liability will be paid immediately upon receipt of due written proof.

Payment of Claims

The benefit is payable to the Covered Person.  But, if a benefit is payable to a Covered Person's estate, a Covered Person who is a minor, or who is not competent, Liberty has the right to pay up to $2,000 to any of the Covered Person's relatives or any other person whom Liberty considers entitled thereto by reason of having incurred expense for the maintenance, medical attendance or burial of the Covered Person.  If Liberty, in good faith, pays the benefit in such a manner, Liberty will not have to pay such benefit again.

Examination

Liberty, at its own expense, will have the right and opportunity to have a Covered Person, whose Injury or Sickness is the basis of a claim, examined by a Physician or vocational expert of its choice.  This right may be used as often as reasonably required.

## SECTION 7 - GENERAL PROVISIONS
### (Continued)

**Legal Proceedings**

A claimant or the claimant's authorized representative cannot start any legal action:

1.  until 60 days after proof of claim has been given; nor

2.  more than one year after the time proof of claim is required.


**Right of Recovery**

If a benefit overpayment on any claim occurs, it will be required that reimbursement be made to Liberty within 60 days of such overpayment, or Liberty has the right to reduce future benefit payments until such reimbursement is received. Liberty has the right to recover such overpayments from the Covered Person or the Covered Person's estate.


**Conformity with State Statutes**

Any provision of this policy which, on its Effective Date, is in conflict with the statutes of the governing jurisdiction of this policy is hereby amended to conform to the minimum requirements of such statute.


**Incontestability**

The validity of this policy shall not be contested, except for non-payment of premiums, after it has been in force for two years from the date of issue. The validity of this policy shall not be contested on the basis of a statement made relating to insurability by any person covered under this policy after such insurance has been in force for two years during such person's lifetime, and shall not be contested unless the statement is contained in a written instrument signed by the person making such statement.


**Canadian Exposure**

With respect to a Covered Person domiciled in Canada: (a) premium and benefit amounts will be deemed to be expressed in Canadian currency; (b) policy provisions concerning the rights of the Covered Person(s) are subject to applicable provincial statutes; and (c) with respect to benefits, an action under this policy may be brought in any court in the province where the Covered Person is domiciled.


**Workers' Compensation**

This policy and the coverages provided are not in lieu of, nor will they affect any requirements for coverage under any Workers' Compensation Law or other similar law.

## SECTION 7 - GENERAL PROVISIONS
### (Continued)

Subrogation

When a Covered Person's Injury appears to be someone else's fault, benefits otherwise payable under this policy for loss of time as a result of that Injury will not be paid unless the Covered Person or his legal representative agrees:

1.  to repay Liberty for such benefits to the extent they are for losses for which compensation is paid to the Covered Person by or on behalf of the person at fault;

2.  to allow Liberty a lien on such compensation and to hold such compensation in trust for Liberty; and

3.  to execute and give to Liberty any instruments needed to secure the rights under 1. and 2. above.

Further, when Liberty has paid benefits to or on behalf of the injured Covered Person, Liberty will be subrogated to all rights of recovery that the Covered Person has against the person at fault. These subrogation rights will extend only to recovery of the amount Liberty has paid. The Covered Person must execute and deliver any instruments needed and do whatever else is necessary to secure those rights to Liberty.

# SECTION 8 - PREMIUMS

**Premium Rates**

Liberty has set the premiums that apply to the coverage(s) provided under this policy. Those premiums are shown in a notice given to the Sponsor with or prior to delivery of this policy.

Liberty may establish new rates for all future premiums as well as the one then due:

1. when the terms of this policy are changed, any such change in policy terms will be made in accord with the General Provisions regarding "Complete Contract - Policy Changes";

2. when a division, or Associated Company is added to this policy; or

3. when the number of Covered Persons changes by 25% or more from the number insured on this policy's Effective Date; or

4. for reasons other than 1., 2., or 3. above, such as, but not limited to a change in factors bearing on the risk assumed. But, the rates may not be changed within the first 36 months following this policy's Effective Date.

No premium may be increased unless Liberty notifies the Sponsor at least 60 days in advance. Premium increases may take effect on an earlier date when both Liberty and the Sponsor agree.

**Payment of Premiums**

1. All premiums due under this policy, including adjustments, if any, are payable by the Sponsor on or before their due dates at Liberty's Administrative Office, or to Liberty's agent. The due dates are specified on the first page of this policy.

2. Premium payment calculations will be based on the coverage(s) provided under this policy. Both are determined by the definition of Basic Monthly Earnings.

3. All payments made to or by Liberty shall be in United States dollars, except with respect to Canadian residents covered under this policy. All payments made to or by Liberty for such individuals must be in Canadian funds.

4. If premiums are payable on a monthly basis, premiums for additional or increased insurance becoming effective during a policy month will be charged from the next premium due date.

## SECTION 8 - PREMIUMS
### (Continued)

Payment of Premiums (Continued)

5.  The premium charge for insurance terminated during a policy month will cease at the end of the policy month in which such insurance terminates. This manner of charging premium is for accounting purposes only. It will not extend insurance coverage beyond a date it would have otherwise terminated as shown in the "Termination of Covered Person's Insurance" provision of this policy.

6.  If premiums are payable on other than a monthly basis, premiums for additional, increased, reduced or terminated insurance will cause a prorated adjustment on the next premium due date.

7.  Except for fraud and premium adjustments, refunds or charges will be made only for:

    a.  the current policy year; and

    b.  the immediately preceding policy year.

Grace Period

This is the 60 days following a premium due date, other than the first, during which premium payment may be made. During the grace period this policy shall continue in force, unless the Sponsor has given Liberty written notice 31 days in advance of discontinuance of this policy.

Waiver of Premium

Premium payments for a Covered Person are waived during any period for which benefits are payable. If coverage is to be continued, premium payments may be resumed following a period during which they were waived.

Form DOP3-PRE-0002

Premiums



LIBERTY
MUTUAL.

Liberty Life Assurance
Company of Boston

## APPLICATION FOR GROUP DISABILITY INCOME INSURANCE

The full legal name of the Applicant is:

American Business Products, Inc.

The Applicant hereby applies for a Group Disability Income insurance policy to be issued by Liberty Life Assurance Company of Boston (hereinafter referred to as Liberty). The requested Effective Date of the policy is: August 1, 1995 .

A complete list of the group's insurers for similar coverage(s) in the past 5 years includes:

| Name | Coverages | Termination Date |
|------|-----------|------------------|
| Life Insurance Company of North American | LTD | July 31, 1995 |
| | | |
| | | |
| | | |

The Applicant offers this Application as an inducement to issue an insurance policy. In doing so, the Applicant understands and agrees that:

No sales representative has the authority to: (a) determine a person's insurability; (b) waive any of Liberty's rights or requirements; or (c) make or modify any contract on Liberty's behalf. No information acquired by a sales representative will bind Liberty unless it is written in this Application.

It is understood and agreed that this Application shall be made Section 9 of the policy applied for. Liberty will not be bound by this Application and will provide no insurance except upon written acceptance by its Home Office.

Signed at _____ Atlanta, GA _____ on _____ July 13, 1995 _____
(City & State)                          (Date)

By: X _____          Henry Curtis III - V.P Administration
(Signature of Authorized Officer)          (Print Name & Title)

Countersigned (where required by law or regulation): _____
(Licensed Resident Agent)

Form DOP3-APP-0001                          Dis/Prod-405

F TRANSMITTAL from PORTSMOUTH - Contract Administration

DATE    7/24/97

:

TO:   Norcross-Pam Jenkins       Office # 505            Benefit Sales Representative.

<u>1</u> copy for Policyholder

TO:   Portsmouth - Disability Claims (Amy Shannon)

TO:   Portsmouth - Contract File

=    **TOTAL QUANTITY**

can Business Products, Inc.            POLICY NO.:   50-274598

| | | | |
|---|---|---|---|
| **NEW POLICY** | ☐ | **POLICY REISSUE AGREEMENT** | Effective: |
| **Disability Amendment # 2** | ☐ | Life Rider # | Effective: |
| **Effective: July 1, 1997** | | | |
| please obtain original application upon delivery of contract | ☐ | PDP Application | Effective: |
| ASO - Disability Mngmt. Agreement | ☐ | ASO - revision(s) (see attached page) | |

Policy Reissue Agreement requiring Policyholder's acceptance must be signed and returned promptly to:
Portsmouth - Contract Administration                   

The Disability Amendment must be signed by the Policyholder accepting the revisions made to the contract and
returned promptly to: - Portsmouth - Contract Administration     Michelle Parshley

The Life Rider must be signed by the Policyholder accepting the revisions made to the contract and
returned promptly to: - Portsmouth - Contract Administration

The PDP Application must be signed by the Policyholder accepting the revisions made to the contract and
returned promptly to: Portsmouth - Contract Administration

DISABILITY MANAGEMENT AGREEMENT . . . .      Following must be done upon delivery:
   Sponsor must sign the Agreement in the attached binder
   Sponsor must sign the duplicate copy of the Agreement, such copy is to be returned no later than the 10th day
   subsequent to the effective date to: Portsmouth - Contract Administration

narks:

Commerce Way - Contract Administration:     Michelle Parshley

3 (10/96)

April 25, 1996

Norcross, GA
Benefit Sales
Pam Jenkins

Re:    DISABILITY INCOME POLICY AMENDMENT
       American Business Products, Inc.


Dear Pam:

The enclosed change(s) are issued to form a part of American Business Products, Inc. Disability Income Policy 50-274598.

The change(s) are effective on the date(s) shown on the enclosed amendment(s), and are subject to all the terms and conditions of the said policy.

Please have the policyholder sign the amendment and return them to us for our files.  We will begin the standard follow-up process if the signed amendment is not received within 40 days.

We recommend that the Policyholder add the enclosed forms to their disability policy and keep it in a safe place.

If you have any questions about any of the enclosed forms, please call me at 8-495-8519.

Sincerely,

Christiana L. O'Connor

Christiana L. O'Connor
Customer Service

Enclosures

AMENDMENT___1___

It is agreed the following changes are hereby made to this policy:  50-274598

The policy is hereby amended by deleting Forms DOP3-SCH-0001, DOP3-DEF-0001/0002, DOP3-DEF-0002/0003/0004, DOP3-LTD-0002 and replacing them with the attached Forms DOP3-SCH-0001, DOP3-SCH-0002, DOP3-DEF-0001/0002, DOP3-DEF-0002/0003/0004, DOP3-DEF-0004/0005, DOP3-LTD-0001 and DOP3-LTD-0002.

The New Pages are marked:  50-274598 and 50-274598 R (1).

The Effective Date of this change is _____April 1, 1996_____

The changes will only apply to Disabilities or Partial Disabilities which start on or after the Effective Date of this change.

This policy's terms and provisions will apply other than as stated in this amendment.

Dated this____25th____day of____April, 1996.

Issued to and Accepted by:

American Business Products, Inc.
Sponsor

By_____
Signature and Title of Officer

Liberty Life Assurance Company of Boston

*Margaret P. Sullivan*

Executive Vice Presedent

Form DOP3-ADM-0004